Keating, J.
(dissenting in part). I would reverse the order of the Appellate Division insofar as it modifies the order of Spe *438 cial Term. Special Term ordered that the Warden cease and desist from intercepting, obstructing or otherwise delaying any communications addressed to any court, to any law enforcement agency, to any executive official of the Federal Government, and to the prisoner’s attorney.
The Appellate Division modified the order of Special Term by limiting the communications to executive officials to complaints of unlawful treatment and communications to his attorney to matters regarding the legality of his detention and the nature of the treatment received. In order to implement these limitations, the Warden is given the right to censor all communications and excise therefrom matters unrelated to the permissible subject matter.
I believe that these limitations as well as the authority given the Warden unnecessarily interfere with and endanger this prisoner’s right to communicate with his attorney and governmental officials having either jurisdiction over the penal system or the power and authority to correct conditions existing therein. (Cf. Ex Parte Hull, 312 U. S. 546, 549.)[1]
In Hull the prison authorities formulated a rule requiring the submission of all legal documents, briefs, etc., to the prison authorities who in turn submitted them to a legal investigator for the Parole Board for the purpose of determining whether they were properly drawn. The Supreme Court in striking down the regulation as invalid wrote: “The considerations that prompted its formulation are not without merit, but the state and its officers may not abridge or impair petitioner’s right to apply to a federal court for a writ of habeas corpus. Whether a petition for a writ of habeas corpus * * * is properly drawn and what allegations it must contain are questions for [the] court alone to determine.”
The Appellate Division, though not disturbing the lower court order as it related to communications to courts, overlooked the fact that Judges and courts are not the only persons or agencies capable of granting relief to prisoners complaining about the illegality of their treatment or detention. For this reason, I see no basis for distinguishing between letters to courts, to the prisoner’s attorney or to government officials. In all of these *439 cases only the recipients of the letters should he permitted to determine whether the contents warrant their intervention and not the very person whose jurisdiction and conduct are being questioned.
The Attorney-General argues that “ [u]nlimited license to communicate could seriously undermine authority and discipline in the prisons.” The order of Special Term, however, does not authorize “unlimited license” to communicate whatever thoughts a prisoner has to whomever he pleases. It permits him to communicate — without any interference or censorship—with the courts, its officers, and members of the executive branch of government who have it within their power to grant the relief requested or assist in obtaining such relief.
Exactly how the exercise of this right will undermine prison discipline and authority is not made clear.[2] The Attorney-General alleges that “ prisoners would be able to carry on unauthorized activities through communications from prisoners to their attorneys and thence to third parties ”. Uncensored communications, however, presently occur on personal visits to the prison by the prisoner’s attorney and members of his family, without any apparent undermining of prison discipline. In any event, the right of a prisoner to unexpurgated communications with his attorney is so significant that it outweighs the danger of frustration of prison rules regarding outside activities in the rare case where an attorney—an officer of the court — would assist a prisoner in avoiding legitimate prison regulations.
The right of an individual to seek relief from illegal treatment or to complain about unlawful conduct does not end when the doors of a prison close behind him. True it is that a person sentenced to a period of confinement in a penal institution is necessarily deprived of many personal liberties. Yet there are certain rights so necessary and essential to prevent the abuse of power and illegal conduct that not even a prison sentence can annul them. As this court once observed, “ An individual, once validly convicted and placed under the jurisdiction of the Department of Correction * * * is not to be divested of *440 all rights and unalterably abandoned and forgotten by the remainder of society.” (People ex rel. Brown v. Johnston, 9 N Y 2d 482, 485.)
Among the rights of which he may not be deprived is the right to fiOTnTrmnicat.fi, without interference, with officers of the court and governmental officials; with those persons capable of responding to calls for assistance. No valid reason, other than the shibboleth of prison discipline, has been advanced for the denial of this right in the case before ns. I believe that courts should look behind inappropriate slogans so often offered up as excuses for ignoring or abridging the constitutional rights of onr citizens.
The order of the Appellate Division, insofar as it modifies the order of Special Term, should be reversed and the order of Special Term reinstated.
Judges Burke, Scileppi and Breitel concur with Judge Bergan; Judge Keating dissents in part in an opinion in which Chief Judge Fuld and Judge Van Voorhis concur.
Order affirmed, without costs.

. It is not urged, of course, that the prisoner has “ any ” constitutional right to assist his fellow prisoners in preparing legal documents.

. The power of the Warden to inspect the prisoner’s communications — a power necessary to the maintenance of prison security—obviates any fear that the right accorded to the prisoner by Special Term will be used to plan an escape or other illegal activity.